**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**DANNY FOSTER** **PLAINTIFF**
**ADC #169352**

**V.** **NO. 3:25-cv-83-DPM-ERE**

**DEXTER PAYNE, *et al.*** **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I. Procedure for Filing Objections

This Recommended Disposition ("RD") has been sent to United States District Judge D.P. Marshall Jr. You may file objections if you disagree with the findings or conclusions set out in the RD. Objections must be specific, include the factual or legal basis for the objection, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

### II. Background

*Pro se* plaintiff Danny Foster, an Arkansas Division of Correction ("ADC") inmate, filed this 42 U.S.C. § 1983 case. *Docs. 2, 5*. He currently is proceeding on First Amendment claims against Defendants ADC Director Dexter Payne, Warden Christopher Budnik, Deputy Warden Claudia Harris, and ADC Chaplain Defendant Perry Jackson for confiscating his religious magazines. Mr. Foster sues these

Defendants in their personal capacity only, seeking monetary and injunctive relief.[1] *Doc. 2 at 2; Doc. 5 at 2*.

Defendants have filed a motion for summary judgment, brief in support, statement of facts, and supplements to each, arguing that Mr. Foster's claims fail as a matter of law. *Docs. 37, 38, 39, 54-1, 54-2, 54-3.* Mr. Foster has responded to Defendants' motion, which is now ripe for review.[2] *Docs. 46, 57.*

For reasons that follow, I recommend the Court grant Defendants' motion for summary judgment.

## III. <u>Discussion</u>

### A. Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.

---

[1] Mr. Foster cannot recover injunctive relief against Defendants in their individual capacities. See *Strutton v. Hacker*, No. 4:23-CV-01134-SPM, 2025 WL 26682, at *5 (E.D. Mo. Jan. 3, 2025) (finding no Eighth Circuit case on point but citing cases from other jurisdictions holding that only money damages are available from a § 1983 defendant sued only in his or her individual capacity).

[2] In response to Defendants' original statement of facts, Mr. Foster states, without explanation, that he disagrees with paragraphs six through thirty. *Doc. 46 at 1-6*. In addition, he states that he did not receive additional pages of Defendants' original statement of facts. However, I previously provided Mr. Foster new copies of Defendants' original motion for summary judgment, brief in support, and statement of facts. *Doc. 41*.

In response to Defendants' supplemental filings, Mr. Foster: (1) asserts that Defendants' exhibit list is confusing; and (2) includes copies of several of the exhibits. *Doc. 57*. Mr. Foster did not file any additional substantive response.

See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B. Factual Evidence**[3]

From June 18, 2018 until April 3, 2024, Mr. Foster was incarcerated at the ADC's Grimes Unit. *Doc. 36-7 at 1-4; Doc. 54-5 at 1*. On April 3, 2024, he was transferred to the ADC's Ouachita River Unit ("ORU") to complete the RSVP Program. *Doc. 2 at 5; Doc. 36-7 at 1; Doc. 54-10 at 1*. While Mr. Foster was away, Grimes Unit officials forwarded his mail, including "church magazines," to ORU.

[3] Unless otherwise noted, these facts are taken from: (1) Mr. Foster's complaint and amended complaint (*Docs. 2, 5*); (2) Mr. Foster's deposition testimony (*Doc. 36-1; Doc. 54-4*); (3) Defendant Budnick's declaration and the supplement to his declaration (*Doc. 36-2*; *Doc. 54-5*); (4) the ADC policies regarding mail at the Grimes Unit, G.U.16.1.0 and G.U. 16.5.0, including the amendment (*Doc. 36-3; Doc. 36-4; Doc. 54-8*); (5) Mr. Foster's returned mail notices (*Doc. 36-6; Doc. 54-9*); and (6) Mr. Foster's inmate assignment sheet (*Doc. 36-7;Doc. 54-10*).

*Doc. 36-1 at 13; Doc. 54-4 at 13*. On October 8, 2024, Mr. Foster had completed the RSVP Program, and ADC officials transferred him back to the Grimes Unit. *Doc. 36-7 at 1l; Doc. 54-5 at 1*.

Mr. Foster is a Seventh Day Adventist and receives the following magazines: Seventh Day Adventist Journey; Southwestern Union of Seventh Day Adventist; and North American Division of Seventh Day Adventist. *Doc. 2 at 4; Doc. 36-1 at 27-33; Doc. 54-4 at 27-33*. According to Mr. Foster, these magazines are usually ten or twenty pages and contain information about the events and activities taking place in various churches. *Doc. 36-1 at 29-34; Doc. 54-4 at 29-34*. During his deposition, Mr. Foster testified that his magazines serve as a news source and provide him with "joy." *Doc. 36-1 at 28; Doc. 54-4 at 28*.

Grimes Unit Policy 16.1.0 ("G.U. Policy 16.1.0") governs inmate correspondence (*Docs. 36-3, 54-6*), and Grimes Unit Policy 16.5.0 ("G.U. Policy 16.5.0") provides the procedure that the Publication Review Committee must follow in determining which publications an inmate may receive. *Doc. 36-4; Doc. 54-7*. According to G.U. 16.5.0, magazines and religious tracts are considered publications. *Doc. 36-4 at 1; Doc. 54-7 at 1*.

On August 16, 2024, Defendant Budnick issued an Amendment to G.U. Policy 16.1.0. *Doc. 54-8 at 1*. According to Defendant Budnick, "[t]he amendment provides that if a piece of mail received for an inmate does not fit the description of

legal mail or publication, as set forth in policy, it is considered general correspondence." *Doc. 54-5 at 2*. The amendment limits general correspondence to three pages. *Doc. 54-5 at 2; Doc. 54-8 at 1.* The pages are photocopied along with the envelope so that two sheets of paper, front and back, are provided for each item. *Id*. The amendment further provides that "all religious publications, including religious tracts, religious catalogs, and religious brochures, which are not addressed to an individual inmate but for all Grimes Unit inmates, are now forwarded to the Grimes Unit Chaplaincy Department for distribution." *Doc. 54-5 at 3; Doc. 54-8 at 1*. "Pursuant to the amendment, religious tracts, catalogs, brochures, etc. that include an inmate's name are now treated as general correspondence." *Id*.

On October 28, 2024, January 6, 2025, and March 7, 2025, Mr. Foster received return mail notices for his copies of Southwestern Union of Seventh Day Adventist. *Doc. 36-6 at 1, 4, 7*; *Doc. 54-9 at 1, 4, 7.* On December 2, 2024, and December 27, 2024, Mr. Foster received return mail notices for his copies of Adventist Journey. *Doc. 36-6 at 2-3*; *Doc. 54-9 at 2-3*. On February 3, 2025, and March 3, 2025, Mr. Foster received return mail notices for North American Division of Seventh Day Adventist. *Doc. 36-6 at 5-6*; *Doc. 54-9 at 5-6*. All notices stated that the magazines were being withheld because they exceeded the page limit contained in the ADC correspondence policy. *Doc. 36-6 at 1-7; Doc. 54-9 at 1-7.*

As Warden of the Grimes Unit, Defendant Budnik reviews the ADC correspondence policies and procedures annually. *Doc. 54-5 at 2*. In his declaration, Defendant Budnik explains that ADC officials amended the mail policy at issue to "combat the influx of illegal drugs into the unit." *Id. at 3*. Defendant Budnick explains: "Prior to the amendment, inmates were asking free-world people obtain a church or religious groups' newsletter[] or magazine[,] soak the pages in an illegal drug such as liquid K-2, liquid meth, or a mixture of drugs, then place it in the mail to another inmate" allowing drugs to be introduced into the unit. *Doc. 54-5 at 3*; *Doc. 36-2 at 3*. As a result, he states, inmates began overdosing after receiving such correspondence and several inmates passed away. *Id*. According to Defendant Budnik, "the amendment was made not only for the safety of the inmates but also for the safety of the unit's correctional staff." *Id*.

In his deposition, Mr. Foster testified that he is challenging the constitutionality of G.U. 16.1.0 and G.U. 16.5.0 because they prohibit him from receiving his religious material. *Doc. 36-1 at 21-23; Doc. 54-4 at 21-23*. However, he acknowledges that he is allowed to have his Bible and "paper to write things down" to practice his religion. *Doc. 36-1 at 27; Doc. 54-4 at 27*. Mr. Foster further conceded that: (1) going without the magazines at issue has not interfered with his ability to practice his religion; and (2) Defendants have not prevented him from practicing his religion. *Doc. 36-1 at 35, 43; Doc. 54-4 at 35, 43*. Rather, Mr. Foster

complains that the new policies prevent him from "enjoy[ing] what my church provides for me." *Doc. 36-1 at 35; Doc. 54-4 at 35.*

**C. Qualified Immunity**

Defendants assert qualified immunity, which protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To overcome the defense at the summary judgment stage, a plaintiff must show: "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't,* 570 F.3d 984, 988 (8th Cir. 2009). "District courts may address these two questions in any order but may not deny qualified immunity without answering both questions in the plaintiff's favor." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014) (citation omitted).

The Free Exercise Clause of the First Amendment prevents prison officials from substantially burdening a prisoner's sincerely held religious belief. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). To constitute a "substantial burden" in this context, a defendant's conduct must:

> significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must

> meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Mbonyunkiza v. Beasley*, 956 F.3d 1048, 1053 (8th Cir. 2020); *Patel*, 515 F.3d at 813. If complained-of government action or policy substantially burdens an inmate's sincerely held beliefs, it is nonetheless valid if "reasonably related to legitimate penological interests." *Gladson v. Iowa Dept, of Corrs.*, 551 F.3d 825, 831-32 (8th Cir. 2009) (quoting *Turner v. Safely*, 483 U.S. 78, 89 (1987)). When making that determination, the court must consider whether: (1) there is a valid rational connection between the prison regulation and the government interest justifying it; (2) there is any alternative means for the inmate to exercise that right; (3) an accommodation would have a significant ripple effect on guards, other inmates, and prison resources; and (4) there is an alternative that fully accommodates the prisoner at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89-91; *Gladson*, 551 F.3d at 831.

Defendants do not challenge the sincerity of Mr. Foster's religious beliefs. Rather, they argue that Mr. Foster has not demonstrated that confiscation of the religious magazines at issue substantially burdened his ability to practice his religion. I agree.

As stated above, during his deposition testimony Mr. Foster testified that: (1) his magazines serve as a news source for him and provide him with "joy" (*Doc. 36-*

*1 at 28; Doc. 54-4 at 28*); (2) he is allowed to have his Bible and "paper to write things down" to practice his religion (*Doc. 36-1 at 27; Doc. 54-4 at 27*); (3) Defendants' preventing him from receiving the magazines is not interfering with his ability to practice his religion; and (4) Defendants have not prevented him from practicing his religion (*Doc. 36-1 at 35, 43; Doc. 54-4 at 35, 43*).

Based on the current record, no reasonable factfinder could conclude that Defendants' confiscation of Mr. Foster's religious magazines substantially burdened his ability to practice his religion. As a result, Defendants are entitled to qualified immunity on Mr. Foster's First Amendment claim.

## IV. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 36*) be GRANTED, and Mr. Foster's claims be DISMISSED, with prejudice.

2. Judgment be entered in favor of Defendants.

3. The Clerk be instructed to close this case.

DATED 14 September 2026.

UNITED STATES MAGISTRATE JUDGE